**Leonard GRIMM, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 45S00–8712–CR–1136.**

Supreme Court of Indiana.

July 25, 1990.

Nathaniel Ruff, Appellate Public Defender, Lake Superior Court, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen. and Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Following a jury trial, appellant Leonard Grimm was found guilty of murder, a class A felony, I.C. 35–42–1–1(1), and received a fifty-year sentence. He now brings this direct appeal, asserting that his conviction must be reversed because of the erroneous admission of a statement given in violation of his *Miranda* rights.

Appellant and the victim, Mattie Turner, had a long and frequently stormy girl-friend-boyfriend relationship. In early February of 1986, appellant returned to East Chicago from Ohio and began living with Turner and her fifteen-year-old son, Dexter Lewis. Turner and the appellant often argued during this period, and Turner subsequently ordered appellant to leave. On February 10, 1986, Lewis, who was listening in on a second phone in the apartment, heard appellant threaten to kill his mother. The next morning, Lewis awoke and found appellant in their apartment. When Lewis returned from school later that day at about 2:30 p.m., he found his mother's body lying by the bathroom door with blood around her. Turner had been beaten on the side of the head with a blunt object, such as a hammer, and died as a result of multiple blunt force injuries to her head.

Appellant was arrested in Chicago, Illinois three days later by Chicago police after he called the Chicago Police Department and surrendered himself as a suspect in connection with Turner's death. Appel-

lant was transported from Chicago to the East Chicago Police Department after having been read his *Miranda* rights by East Chicago Police Detective Edward Samuels. Upon arriving at the East Chicago Police Department, appellant was again advised of his rights, and he signed a *Miranda* rights waiver form. Appellant was then interrogated and made an oral statement in which he stated that he had gone to Turner's apartment around 2:00 p.m. on February 11 and found the door ajar and Turner lying in a pool of blood in the bathroom. Appellant stated that she was still alive and he cradled her head, at which time Turner spoke his name and then died. At this time, appellant stated that he panicked and fled to Chicago.

Appellant then said that he did not wish to say anything further and he requested to speak with an attorney and with Deputy Chief Harvey Sanders of the East Chicago Police Department, who had known both appellant and Turner for approximately twenty-five years. The interrogation then ceased. Shortly thereafter, appellant telephoned his brother and stated that he wanted an attorney and he wished to speak with Deputy Chief Sanders. Appellant alleges that he never directly told Detective Samuels that he desired such a meeting, but that Detective Samuels overheard his conversation with his brother in which appellant stated he wanted to meet with Deputy Chief Sanders. However, in the hearing on appellant's Motion to Suppress Statements held on May 15 and 18 of 1987, Detective Samuels stated that the appellant informed him directly of his desire to meet with Deputy Chief Sanders. At trial, Detective Samuels stated that he believed appellant told him that he wanted to meet with Deputy Chief Sanders.

Detective Samuels then arranged the February 15, 1986, meeting between appellant and Sanders. Immediately prior to the meeting, Samuels asked appellant if he still wished to speak with Sanders, and appellant stated that he did. Samuels then asked appellant if he wanted to speak to Sanders alone and appellant said that he did, at which time Samuels left the room. Immediately after Samuels's departure, ap-

pellant blurted out to Sanders, "I did it, I did it." Appellant stated that he could not stop beating her and that he had used a hammer.

Appellant objected to the admission of Sanders's testimony regarding his statement both in a hearing on a Motion to Suppress Statements and at trial. On appeal, appellant claims that the trial court erred in admitting his oral statement to Deputy Chief Sanders, arguing that after he invoked his right to counsel, all custodial interrogation was to cease, that his statement was the result of interrogation after the invocation of his right to counsel, and that the State failed to show that his statement to Sanders was voluntary considering all of the circumstances.

The present case is closely akin to the case of *Romine v. State* (1983), Ind., 455 N.E.2d 911, where this Court stated:

> The *Miranda* case envisions the circumstances presented here, where, after a complete advisement of rights and an express waiver and the commencement of custodial interrogation, the suspect then specifically invokes the right to counsel. At that point interrogation must cease until counsel is provided. A confession procured upon further interrogation after that point without counsel present is inadmissible unless, upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the suspect, the State proves beyond a reasonable doubt that the suspect then voluntarily, knowingly, and intelligently relinquished or abandoned the right to counsel. *Edwards v. Arizona* [451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)]. *Cf. Bryan v. State* (1982), Ind., 438 N.E.2d 709. A confession given after the invocation of the right to counsel may also be admissible if the suspect initiates the statement and the interrogators merely listen to it. Such confessions are considered voluntary, volunteered statements to which the safeguards of *Miranda* do not apply. *Edwards v. Arizona, supra.*

*Id.* at 914.

However, the initiation of a conversation or discussion by an accused by itself is not sufficient to establish a waiver of the previously asserted right to counsel. If the accused is found to have initiated a conversation or dialogue, the subsequent inquiry is whether there is a valid waiver of the right to counsel, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities. *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) (citing *Edwards v. Arizona, supra* ).

█ Where a person charged with a crime decides to challenge the admissibility of his own statement as involuntary by way of a motion to suppress and trial objection, the trial court is required to conduct a hearing outside the presence of the jury and to make a reliable and clear cut determination that the statements and any appurtenant waivers of rights were in fact voluntarily rendered. *Craig v. State* (1977), 267 Ind. 359, 370 N.E.2d 880. In deciding upon such voluntariness, the trial court must place the burden of proof thereof upon the state. In reviewing a trial court's ruling that a challenged statement or confession is admissible, this Court looks to the evidence placed before the trial court which supports the ruling, and if from that viewpoint there is substantial evidence of probative value from which the trial court could reasonably have concluded beyond a reasonable doubt that the confession and appurtenant waivers of rights were freely and voluntarily made, the ruling will not be disturbed. *Johnson v. State* (1987), Ind., 513 N.E.2d 650; *Coppock v. State* (1985), Ind., 480 N.E.2d 941; *Partlow v. State* (1983), Ind., 453 N.E.2d 259; *Chandler v. State* (1981), 275 Ind. 624, 419 N.E.2d 142.

█ The evidence in this case strongly supports the trial court's determination that appellant initiated the dialogue with Deputy Chief Sanders. There is no dispute as to the fact that appellant, in a conversation with his brother, requested that he be able to meet with Sanders. Further, Detective Samuels testified that he believed that appellant asked him to arrange a meeting between appellant and Sanders. In addition, immediately before the meeting was to occur, Samuels asked appellant if he still wanted to meet with Sanders, and appellant answered affirmatively. Detective Samuels then asked appellant if he would prefer to be alone with Sanders, appellant indicated that he would, and Samuels then left the room. The evidence thus supports the trial court's finding that it was appellant who initiated this dialogue with Deputy Chief Sanders.

█ The evidence also supports the trial court's finding that based on the particular facts and circumstances surrounding the case, appellant voluntarily, knowingly, and intelligently relinquished or abandoned his right to counsel. Appellant was informed of his rights orally in Chicago on February 14 before he was transported to East Chicago. Upon his arrival in East Chicago, appellant was again made aware of his rights, and he initialled and signed a *Miranda* rights waiver form. After making a brief oral statement, appellant then invoked his right to counsel, and interrogation ceased. From the foregoing circumstances, it is evident that appellant voluntarily, knowingly, and intelligently relinquished his right to counsel when he subsequently made his statement to Deputy Chief Sanders.

Thus, the trial court's decision to admit into evidence at trial appellant's oral statement made to Deputy Chief Sanders is supported by substantial evidence of probative value and therefore ought not to be disturbed. The conviction is affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.