Troy J. HICKMAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 34A04–9405–CR–201.

Court of Appeals of Indiana.

July 26, 1995.

Merrill W. Otterman, Deputy Howard County Public Defender, Kokomo, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Troy J. Hickman appeals from his convictions of robbery, a Class

A felony;[1] attempted robbery, a Class A felony;[2] and conspiracy to commit burglary, a Class B felony.[3]

We affirm.

## ISSUES

Hickman presents two issues for our review, which we re-state as follows:

1. Whether the trial court properly admitted Hickman's taped confession into evidence.

2. Whether the State presented sufficient evidence to establish the *corpus delecti* for attempted robbery and conspiracy to commit burglary.

## FACTS AND PROCEDURAL HISTORY

The victims in this case are 77–year–old Delores Wagner and her 66–year–old sister, Rosemary Wagner. Delores and Rosemary resided together at 1609 North Webster Street in Kokomo, Indiana. During the evening of September 27, 1993, a young man rang the victims' doorbell. Delores answered the door and the young man asked to use her telephone because his car had broken down. Delores let the man in and led him to the telephone. After the man dialed a number several times, Rosemary became suspicious and offered to dial the number for him so that he could return to his car. As Rosemary accompanied him · to the door, he grabbed her by the throat, threatened her with a knife and demanded her money. When Rosemary began screaming, he pushed her down and beat her until she lost consciousness.

Upon regaining consciousness, Rosemary managed to summon the police by calling 911. Minutes later paramedics and Kokomo police officers arrived on the scene finding Delores unconscious and bleeding profusely. Delores sustained severe head injuries, lacerations to the neck and forehead, and her right ear was partially severed. Rosemary sustained stab wounds above and below her right eye, face, forearm and ear, severe facial injuries, and her right middle finger was partially severed. The victims were immediately transported to St. Joseph Hospital. Upon arriving at the hospital, it was discovered that both victims had sustained fractured skulls.

Rosemary's billfold and an undetermined amount of money were taken from the home. Neither victim was able to positively identify the attacker; however, they both stated that he wore a hat and dark clothing.

The evidence adduced at trial, including Hickman's taped confession, reveals that on September 27, 1993, Hickman, together with his brother Ronnie Hickman and a friend Chris Hamblin, decided to gain entry into the victims' home to steal money. The three agreed that Chris would knock on the door and if somebody was home he would ask to use the phone. Ronnie was posted as a lookout in the nearby alley. Hickman entered the victims' home after Chris, and after the victims became suspicious, Chris and Hickman began pushing, punching, kicking and cutting the victims. Chris took money from a purse, and the three teens fled from the scene.

On November 8, 1993, Hickman was charged by information with two counts of robbery and one count of conspiracy to commit burglary. Juvenile jurisdiction was automatically waived and Hickman was tried as an adult. The jury found Hickman guilty of attempted robbery, as a lesser included offense, robbery and conspiracy to commit burglary. Hickman was sentenced to 50 years incarceration. He appeals.

## DISCUSSION AND DECISION

### I. Admissibility of Confession

Hickman challenges the admissibility of his statements made during custodial police interrogation on two grounds. First, he contends that he was denied an opportunity for meaningful consultation with his parents, and second he contends that he did not knowingly and voluntarily waive his rights. Hickman filed a pretrial motion to suppress his confession, which the trial court denied.

1. IND.CODE 35–42–5–1(1) (1988).

2. I.C. 35–41–5–1 (1988); I.C. 35–42–5–1(1).

3. I.C. 35–41–5–2 (1988); I.C. 35–43–2–1 (1988).

When reviewing the denial of a motion to suppress a confession, we do not reweigh the evidence. Rather, we consider all uncontroverted evidence together with any conflicting evidence that supports the trial court's decision. *Buie v. State* (1994), Ind., 633 N.E.2d 250, 256, *reh'g denied.* We will not disturb the trial court's ruling if there is substantial evidence of probative value from which the trial court could reasonably have concluded beyond a reasonable doubt that the confession and waiver of rights were freely and voluntarily made. *Grimm v. State* (1990), Ind., 556 N.E.2d 1327, 1330. The burden rests on the State to show beyond a reasonable doubt that a defendant knowingly, intelligently and voluntarily waived his rights under *Miranda*.[4] *Id.* We now turn to the two arguments raised by the defendant.

### A. Meaningful Consultation

Hickman first contends that his confession was erroneously admitted into evidence because he was denied the opportunity of meaningful consultation with his father.

The requirements for the waiver of constitutional rights of a child have been codified by our legislature in I.C. 31–6–7–3 (1988). The statute provides in pertinent part as follows:

(a) Any rights guaranteed to the child under the Constitution of the United States, the Constitution of Indiana, or any other law may be waived only:

(1) by counsel retained or appointed to represent the child, if the child knowingly and voluntarily joins with the waiver; or

(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:

(A) that person knowingly and voluntarily waives the right;

(B) that person has no interest adverse to the child;

(C) meaningful consultation has occurred between that person and the child; and

(D) the child knowingly and voluntarily joins with the waiver.

(b) The child may waive his right to meaningful consultation under subdivision (a)(2)(C) if he is informed of that right, if his waiver is made in the presence of his custodial parent, guardian, custodian, guardian ad litem, or attorney, and if the waiver is made knowingly and voluntarily.

I.C. 31–6–1–2 (1988) defines "child" as a person under eighteen years of age. The taped confession at issue was taken on October 7, 1993, at which time Hickman was two months away from his eighteenth birthday. Thus, pursuant to I.C. 31–6–1–2, Hickman was a "child" at the time of the confession and entitled to the protections provided to children under our juvenile code.

The meaningful consultation requirement of I.C. 31–6–7–3 is an added protection afforded only to juveniles. *Foster v. State* (1994), Ind.App., 633 N.E.2d 337, 347, *trans. denied.* This additional safeguard applicable to juvenile waivers may be satisfied by "actual consultation of a meaningful nature or by the express opportunity for such consultation, which is then forsaken in the presence of the proper authority by the juvenile, so long as the juvenile knowingly and voluntarily waives his constitutional rights." *Id.* at 347 (citing *Williams v. State* (1982), Ind., 433 N.E.2d 769, 772). We require strict compliance with the statute in order to protect the juvenile's rights. *Foster,* 633 N.E.2d at 347 (citing *Deckard v. State* (1981), Ind. App., 425 N.E.2d 256, 257). The State bears the burden of proving that meaningful consultation has occurred or that the opportunity of meaningful consultation has been afforded. *Foster,* 633 N.E.2d at 347; *Callahan v. State* (1988), Ind., 527 N.E.2d 1133, 1138.

During early October, 1993, prior to the time that formal charges were filed, Hickman was picked up for questioning several times by various members of the Kokomo Police Department. Prior to each interrogation Hickman's father and/or step-mother were brought to the police station. The record reflects that Hickman and his father signed a juvenile interrogation advise of rights form

4. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

and waiver of rights on October 3, 1993, October 6, 1993, and October 7, 1993. The record further reveals that Hickman's step-mother signed a consent to search advise of rights form on October 7, 1993.

The statement at issue was taken on October 7, 1993. It is undisputed that prior to questioning, the advise of rights and waiver form was read to both Hickman and his father and signed by them both at approximately 4:30 p.m. Following the waiver of rights, Hickman was interrogated by Kokomo Police Officer Shawn Kinney until approximately 7:15 p.m. During Officer Kinney's interview, Hickman's father left the station house. He returned at around 7:15 p.m. with dinner for his son. Hickman was permitted time to eat before interviewing resumed. Kokomo Police Officer Larkin Fourkiller and Captain Michael Holsapple interviewed Hickman from approximately 7:40 p.m. until approximately 11:30 p.m. At approximately 11:30 p.m., Hickman gave a taped statement admitting his involvement in the crimes charged and implicating his co-conspirators.

Our review of the record reveals that neither Hickman nor his father at any time during the interview process invoked any rights, indicated that they wanted the questioning to stop, or requested an attorney. In fact, Officer Fourkiller testified that he asked Hickman several times if he wanted to terminate the interview, and Hickman insisted that he wanted to talk. Additionally, although Hickman's father was not in the interrogation room every moment during the evening, Hickman's father and step-mother were in the interrogation room the entire time Hickman gave the taped statement. At one point when Hickman's father was not present in the room and Hickman requested to speak to his father, Captain Holsapple brought Hickman's father to the room to confer with his son in private. Hickman and his father were permitted to engage in three additional private consultations during the course of the interview.

Based on the evidence adduced at the motion to suppress hearing and at trial, we conclude that the State met its burden of proving that the meaningful consultation requirement of I.C. 31–6–7–3(a) had been met.

## B. Waiver of Rights

▮▮▮▮ Having decided that the meaningful consultation requirement was met, we next determine whether, considering all of the circumstances, Hickman knowingly, voluntarily and intelligently waived his rights. When a criminal defendant challenges the admissibility of his statements as involuntary by filing a motion to suppress, the trial court is required to conduct a hearing outside the presence of the jury and to make a reliable and clear cut determination that the statements and waivers of rights were voluntarily given. *Grimm*, 556 N.E.2d at 1330.

In the juvenile context, the statute sets forth several circumstances for the trial court's consideration:

> In determining whether any waiver of rights during custodial interrogation was made knowingly and voluntarily, the juvenile court shall consider all the circumstances of the waiver, including:
> (1) the child's physical, mental, and emotional maturity;
> (2) whether the child or his parent, guardian, custodian, or attorney understood the consequences of his statements;
> (3) whether the child and his parent, guardian, or custodian had been informed of the delinquent act with which the child was charged or of which he was suspected;
> (4) the length of time he was held in custody before consulting with his parent, guardian, or custodian;
> (5) whether there was any coercion, force, or inducement; and
> (6) whether the child and his parent, guardian, or custodian had been advised of the child's right to remain silent and to the appointment of counsel.

I.C. 31–6–7–3(d).

The uncontroverted evidence shows that Hickman was advised of his *Miranda* warnings prior to being questioned on the night of October 7. At the pre-trial motion to suppress hearing, Officer Kinney testified that he read the standard juvenile interrogation advise of rights form to Hickman and his father, and that they both signed the form.

As we have previously noted, Hickman at no time requested an attorney, nor did he invoke his right to remain silent. It is uncontroverted that both Hickman and his father signed the written waiver of rights form and consented to the statement being taped. Furthermore, Hickman and his father had been through the waiver process at least twice before on the preceding days, and Hickman and his step-mother had consented to a search on the same evening.

Hickman was afforded the opportunity of a hearing where both the underlying factual issues and the voluntariness of his confession were separately and reliably determined. After reviewing the totality of the circumstances surrounding Hickman's waiver of rights and his ensuing incriminating statements, we find that he knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. There is no evidence in the record that indicates that he was in any way coerced or threatened by the officers, and thus we have no reason to doubt that his confession was freely and voluntarily given.

## II. *Corpus Delecti*

Hickman next contends that the State failed to present evidence outside of his confession sufficient to establish the *corpus delecti* for attempted robbery and conspiracy to commit burglary. In order for a confession to be introduced at trial, the State must produce corroborating evidence of the *corpus delecti*. The *corpus delecti* generally includes two elements: evidence that an act occurred and evidence that the act involved some criminality. *Groves v. State* (1985), Ind.App., 479 N.E.2d 626, 628. Independent proof of the defendant's identity as the perpetrator of the crime is usually not required because such proof, along with the other elements of *corpus delecti*, would constitute proof of the whole crime and would eliminate the value of confessions. *Id.* (citing *Jones v. State* (1969), 253 Ind. 235, 252 N.E.2d 572).

Hickman was found guilty of attempted robbery as the lesser included offense charged in Count I. Evidence of the *corpus delecti* for the attempted robbery of Delores Wagner includes evidence that young boys gained entry into the Wagners' home by using a false pretense, that Delores was severely beaten and that hair samples matching Delores's were found on the pants Hickman wore on September 27, 1993. Evidence of the *corpus delecti* for conspiracy to commit burglary includes the following evidence: Hickman and Chris were seen leaving Hickman's house together on the night of September 27, 1993; a cab driver picked up the Hickman brothers on the night of the attack and said that Troy Hickman had "a nice sized wad" of money with him (R. 443); and Troy Hickman told a friend that he had money because he and his brother Ronnie "broke in some old people's house" (R. 450). Based on this independent proof, we find that the *corpus delecti* for attempted robbery and conspiracy to commit burglary was sufficiently established. Hickman's inculpatory statements were properly admitted into evidence.

## CONCLUSION

Based on the foregoing, we conclude that Hickman was afforded the opportunity of meaningful consultation with his father pursuant to I.C. 31-6-7-3. We further conclude that Hickman's statements were voluntarily given during custodial interrogation after he was fully advised of his rights pursuant to the Fifth, Sixth and Fourteenth Amendment, and Hickman signed a waiver of rights form voluntarily waiving those rights. We further conclude that the State presented sufficient evidence of the *corpus delecti* for attempted robbery and conspiracy to commit burglary.

Accordingly, the trial court properly denied Hickman's motion to suppress his incriminating statements. The trial court is affirmed in all respects.

CHEZEM, J., concurs in result.

HOFFMAN, J., concurs.