

FILED

Oct 02 2018, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy D. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason Michael Gibson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 2, 2018 <br><br> Court of Appeals Case No. <br> 18A-CR-743 <br><br> Appeal from the St. Joseph <br> Superior Court <br><br> The Honorable Jane Woodward <br> Miller, Judge <br><br> Trial Court Cause No. <br> 71D01-1706-F3-37 |

**Najam, Judge.**

## Statement of the Case

[1]   Jason Michael Gibson appeals his convictions for robbery, as a Level 3 felony, and conspiracy to commit robbery, as a Level 3 felony, following a jury trial. He presents the following issues for our review:

1. Whether the trial court committed fundamental error when it entered judgment of conviction for conspiracy to commit robbery.

2. Whether the trial court abused its discretion when it admitted into evidence his inculpatory statements to law enforcement.

3. Whether the trial court abused its discretion when it admitted the testimony of an eight-year-old witness.

4. Whether his convictions violate Indiana's prohibition against double jeopardy.

5. Whether the trial court abused its discretion when it sentenced him.

We affirm.

## Facts and Procedural History

On May 29, 2017, Tyshawn Owens was babysitting Talanda Peck's five children at her home in South Bend. Peck was gone overnight, and Owens invited his friends Gibson and Shayla Brazier to spend the night. After Gibson and Brazier left on the morning of May 30, they met with Deangelo Dove and Deziara Parker and discussed robbing Peck's house.

At approximately 11:00 a.m. that morning, Dove entered Peck's house, and within a few minutes someone disabled a video surveillance system at the house. Two of Peck's daughters, including T.O., were in Peck's bedroom when Dove, who had a gun, found them and tied them up using duct tape. At some

point, one of the perpetrators used duct tape to tie up Owens. Gibson, Dove, and Parker then stole from the home televisions, a computer, an iPad, a cell phone, a vacuum cleaner, and tennis shoes. A neighbor, Michael Griffin, saw a blue Buick with front-end damage parked in Peck's backyard during the time of the robbery. And Griffin saw that car drive away shortly before Peck's daughters and Owens, who were able to get out of the duct tape bindings, came to his house and told him they had just been robbed. At some point, T.O. went to a nearby store and called police to report the robbery.

[5] Later that evening, Officer Scott Gutierrez with the South Bend Police Department was on patrol when he saw a blue Buick with front-end damage, which he knew matched the description of the car used in the robbery earlier that day. Officer Gutierrez followed the car until it stopped at a gas station, where he initiated a traffic stop. He questioned the female driver, Caprice Guidan, and the passenger, Parker, and he conducted a search of the car. Officer Gutierrez found an ATM card belonging to Dove in the back passenger seat.

[6] In the meantime, Officer James Taylor questioned Gibson at the police station.[1] Gibson told Officer Taylor that he and Dove had made a plan to rob Peck's

---

[1] The record does not reveal how officers learned that Gibson was involved in the robbery, but it appears that Owens told officers of Gibson's involvement.

house, that Dove had committed the robbery, and that the stolen items could be found at Guidan's house. Officers later found several of the stolen items there.

[7] On June 5, 2017, the State charged Gibson with three counts of robbery, as Level 3 felonies. On December 15, the State amended the information to add a fourth count, conspiracy to commit robbery, as a Level 3 felony. And in January 2018, the State moved to amend the three robbery charges "to allege that [Gibson] Aided, Induced, or Caused another person in committing [sic] the robberies against Tyshawn Owens and the two minor children" on May 30, 2017. Appellant's App. Vol. 2 at 39. The trial court permitted that amendment over Gibson's objection.

[8] At trial, the court instructed the jury on the elements of the four counts against Gibson: three counts of robbery and one count of conspiracy to commit robbery. And the State and defense counsel addressed all four counts in their opening and closing arguments. The jury found Gibson guilty as charged on all four counts, but the trial court entered judgment of conviction only on one count of robbery, as a Level 3 felony, and conspiracy to commit robbery, as a Level 3 felony. The court then sentenced Gibson to fourteen years for robbery and three years for conspiracy to commit robbery, and the court ordered those sentences to be executed and to run consecutively. This appeal ensued.

# Discussion and Decision

## *Issue One: Conspiracy to Commit Robbery*

[9]    Gibson first contends that, because the State's amended information filed in January 2018 only referenced the three robbery counts, "he was not charged with [conspiracy to commit robbery] at the time he went to trial" and his conviction on that count "must be vacated." Appellant's Br. at 12. He maintains that he "cannot be convicted of a crime for which he was not charged by the State of Indiana and it would be fundamental error to do so." *Id.* But the State points out that it did not dismiss the conspiracy to commit robbery charge by its January 2018 amendment, so it was still a "live" charge at the time of trial. We agree with the State.

[10]    "In every criminal case, an accused is entitled to clear notice of the charge or charges against which the State summons him to defend." *Wright v. State*, 658 N.E.2d 563, 565 (Ind. 1995) (citing Ind. Const. art 1, § 13). "Clear notice serves the dual purposes of allowing an accused to prepare his defense and of protecting him from being placed twice in jeopardy for the same offense." *Id.* Here, there is no dispute that the State charged Gibson with conspiracy to commit robbery when it amended the information to add that charge in December 2017, and there is no dispute that Gibson had prepared his defense to that charge after clear notice of the charge. And at trial, Gibson argued the conspiracy to commit robbery charge in opening and closing statements, and he proffered a jury instruction on the conspiracy charge.

[11] The only question on appeal is whether, when the State amended the information a second time in January 2018, the conspiracy to commit robbery charge was effectively dismissed or remained a "live" charge against Gibson. We have found no statutory or case law indicating that where, as here, the State amends some but not all charges in an information without any reference to unamended charges previously filed, the amended information effectively dismisses the previously charged but unamended counts. Rather, it appears that an amended information revising fewer than all charges against a defendant only supersedes the previous information *as to the amended counts*.

[12] We note that the better practice would be to include both the unamended charges and the amended charges in a single, clean charging document before the start of trial so as to avoid the type of confusion presented here. But there is nothing that prohibits what the State did here. Indeed, when the State added the fourth count, conspiracy to commit robbery, by amendment in December 2017, it included only that single count in the amended information. *See* Appellant's App. Vol. 2 at 35. Accordingly, when the State amended the three robbery counts in January 2018 and included only those three counts in the second amended information, that procedure was consistent with the manner in which the State amended the information the first time. *See id.* at 41-42.

[13] In sum, under the facts and circumstances presented here, where Gibson was clearly notified of the charge of conspiracy to commit robbery and prepared and executed a defense to that charge at trial, and where the State did not dismiss

the conspiracy charge prior to trial, the trial court's entry of judgment of conviction on that charge was not error, let alone fundamental error.

### Issue Two: Inculpatory Statements

[14] Gibson next contends that the trial court abused its discretion when it admitted into evidence his inculpatory statements to police. Gibson maintains that the State did not "establish a *corpus delicti*" required to admit those statements at trial. Appellant's Br. at 14. We cannot agree.

[15] In *Shinnock v. State*, 76 N.E.3d 841, 843 (Ind. 2017), our Supreme Court explained as follows:

> In Indiana, a person may not be convicted of a crime based solely on a nonjudicial confession of guilt. *Green v. State*, 159 Ind. App. 68, 304 N.E.2d 845, 848 (1973). Rather, independent proof of the *corpus delicti* is required before the defendant may be convicted upon a nonjudicial confession. *Id.* Proof of the *corpus delicti* means "proof that the specific crime charged has actually been committed by someone." *Walker v. State*, 249 Ind. 551, 233 N.E.2d 483, 488 (1968). Thus, admission of a confession requires some independent evidence of commission of the crime charged. *Workman v. State*, 716 N.E.2d 445, 447 (Ind. 1999). The independent evidence need not prove that a crime was committed beyond a reasonable doubt, but merely provide an inference that the crime charged was committed. *Malinski v. State*, 794 N.E.2d 1071, 1086 (Ind. 2003). This inference may be created by circumstantial evidence. *Id.*
> The purpose of the *corpus delicti* rule is to prevent the admission of a confession to a crime which never occurred. *Hurt v. State*, 570 N.E.2d 16, 19 (Ind. 1991). The State is not required to prove the *corpus delicti* by independent evidence prior to the admission of a confession, as long as the totality of independent evidence

presented at trial establishes the *corpus delicti*. *McManus v. State*, 541 N.E.2d 538, 539-40 (Ind. 1989).

[16]     Further, as the State points out,

> the State's case may be tested by reference to the *corpus delicti* in two ways. For the preliminary purpose of determining whether the confession is admissible, the State must present evidence independent of the confession establishing that the specific crime charged was committed by someone. The degree of proof required to establish the *corpus delicti* for admission of a confession is that amount which would justify the reasonable inference that the specific criminal activity had occurred. It is not necessary to make out a *prima facie* case as to each element of the offense charged, and the *corpus delicti* may be shown by circumstantial evidence.
>
> On the other hand, in order to sustain a conviction the *corpus delicti* must be proved beyond a reasonable doubt. In determining the sufficiency of the evidence for conviction, the confession may be considered along with the independent evidence.

*Harkrader v. State*, 553 N.E.2d 1231, 1232-33 (Ind. Ct. App. 1990) (citations omitted).

[17]     Here, we cannot discern whether Gibson is challenging one or both types of *corpus delicti* requirements. In any event, in essence, Gibson contends that, other than his inculpatory statements, there is no evidence that he had made an agreement with Dove to commit the robbery to establish the conspiracy. But T.O. testified that she saw Gibson helping another man steal televisions from the house, and she saw both men going through her mother's jewelry. Gibson

and Dove worked together to commit the robbery, which is circumstantial evidence to support a reasonable inference that they had made a plan before they arrived to commit the robbery. *See Hickman v. State*, 654 N.E.2d 278, 283 (Ind. Ct. App. 1995) (holding *corpus delicti* for conspiracy to commit burglary satisfied where circumstantial evidence showed defendant had committed burglary with others' help). We hold that the *corpus delicti* rule was satisfied here. In particular, the trial court did not abuse its discretion when it admitted into evidence Gibson's inculpatory statements to police, and the evidence was sufficient to support Gibson's conviction for conspiracy to commit robbery.

### Issue Three: T.O.'s Testimony

[18] Gibson contends that T.O., who was eight years old at the time of trial, was "not a competent witness." Appellant's Br. at 17. Thus, he maintains that the trial court abused its discretion when it allowed her to testify. But, while Gibson initially questioned her competency, after the trial court conducted a competency hearing and found her competent, Gibson made no objection to her testimony.

[19] It is well settled that the failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal. *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000). A contemporaneous objection affords the trial court the opportunity to make a final ruling on the matter in the context in which the evidence is introduced. *Id.* Gibson's failure here results in waiver of appellate review. *See, e.g.*, *Kochersperger v. State*, 725 N.E.2d 918, 922

(Ind. Ct. App. 2000) (holding defendant waived issue of child witness' competency for failure to make contemporaneous objection).

### Issue Four:  Double Jeopardy

[20] Gibson contends that his convictions violate double jeopardy principles.  He maintains that, because "[t]here was no independent evidence of any agreement between co-conspirators except Gibson's statements[,]" there is a "reasonable possibility that the jury relied on the same evidence to prove both the conspiracy to commit robbery as to prove the robbery, namely:  Gibson's statements."  Appellant's Br. at 16.  Gibson misunderstands the actual evidence test under Article 1, Section 14 of the Indiana Constitution, and his contention on this issue is without merit.

[21] Article 1, Section 14 of the Indiana Constitution states, "No person shall be put in jeopardy twice for the same offense."  In *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999), our Supreme Court held that two or more offenses are the "same offense" in violation of Article 1, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

[22] Here, Gibson does not contend a violation under the statutory elements test.  Instead, he claims that his convictions constitute double jeopardy under the actual evidence test.  "The actual evidence test prohibits multiple convictions if there is 'a reasonable possibility that the evidentiary facts used by the fact-finder

to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" *Davis v. State*, 770 N.E.2d 319, 323 (Ind. 2002) (quoting *Richardson*, 717 N.E.2d at 53). The actual evidence test "is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

[23] A "reasonable possibility" that the trier of fact used the same facts to reach two convictions requires substantially more than a logical possibility. *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008). "'[R]easonable possibility' turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.* Application of this test requires the court to "identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective[.]" *Spivey*, 761 N.E.2d at 832. In determining the facts used by the jury to establish the elements of each offense, we consider the charging information, jury instructions, and arguments of counsel. *Lee*, 892 N.E.2d at 1234; *Spivey*, 761 N.E.2d at 832; *Richardson*, 717 N.E.2d at 54 n.48.

[24] The State charged Gibson with robbery, as a Level 3 felony, as follows:

> On or about May 30, 2017 in St. Joseph County, State of Indiana, Jason Michael Gibson did knowingly aid, induce, or cause another person or persons, including Deangelo Dove, to

knowingly take property from another person or the presence of another person, to-wit: T.O., by putting T.O. in fear, while armed with a deadly weapon.

Appellant's App. Vol. 2 at 41. And the State charged Gibson with conspiracy to commit robbery as follows:

> On or about May 30, 2017, in St. Joseph County, State of Indiana, JASON MICHAEL GIBSON, with the intent to commit the crime of Armed Robbery, did agree with one or more other persons, including Deangelo Dove, to commit the crime of Armed Robbery by knowingly taking property from the presence of Tyshawn Owens by using or threatening the use of force while armed with a deadly weapon, and that one or more of those other persons did commit an overt act in furtherance of the agreement.

*Id.* at 35.

[25] At trial, the court instructed the jury in relevant part that the State had to prove beyond a reasonable doubt that either Gibson or Dove committed the overt act of entering Peck's residence in furtherance of their agreement to prove conspiracy. And in its closing argument, the State directed the jury to the evidence that Dove entered the residence to prove the overt act in support of the conspiracy charge. That evidence has no relation to the evidence supporting the robbery charge, which required only proof that Gibson aided Dove in stealing items from the presence of T.O., which T.O.'s testimony supports. In short, considering the charging information, jury instructions, and arguments of counsel there is no reasonable possibility that the jury used the evidence proving

the elements of robbery to also establish the elements of conspiracy to commit robbery. We hold that Gibson's convictions do not violate double jeopardy principles.

### *Issue Five: Sentencing*

[26] Finally, Gibson contends that the trial court abused its discretion when it sentenced him. As our Supreme Court has explained,

> sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. . . . So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion. . . . An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.
>
> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, *or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration*, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Anglemyer v. State*, 868 N.E.2d 482, 490-91 (Ind. 2007) (emphasis added) (some citations and quotation marks omitted), *clarified on reh'g*, 875 N.E.2d 218 (2007).

[27] Gibson maintains that "the trial court failed to recognize mitigating factors clearly advanced for consideration[,]" namely, his youth, his cooperation with police in this case, his remorse, his desire to "repay the victims for the property taken," and the undue hardship his incarceration will pose on his daughter. Appellant's Br. at 19-20. However, it is well settled that a trial court does not abuse its discretion if it does not consider a mitigating factor that a defendant does not raise at sentencing. *Anglemyer*, 868 N.E.2d at 492. The State points out that Gibson did not proffer to the trial court any of the mitigators he outlines in his brief on appeal.

[28] In any event, at sentencing the trial court considered Gibson's youth and remorse, but declined to give them any mitigating weight. It is well settled that a trial court is under no obligation to explain why a proposed mitigator does not exist or why the court found it to be insignificant. *Sandleben v. State*, 22 N.E.3d 782, 796 (Ind. Ct. App. 2014), *trans. denied*. Gibson has not shown that the trial court abused its discretion when it sentenced him. *Id.*

[29] Affirmed.

Crone, J., and Pyle, J., concur.