**Stephen K. SHERWOOD, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 55S00–9708–CR–441.

Supreme Court of Indiana.

Oct. 1, 1999.

Eric K. Koselke, Special Assistant to the State Public Defender, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Stephen K. Sherwood made multiple timely requests to proceed pro se. Though Sherwood was mentally competent and duly advised about the perils of self-representation, the trial court ordered hybrid representation. This violated the Sixth Amendment.

### Facts and Procedural History

In October 1995, 4–year–old Hope James and her mother Alice Barrett were living in a motel room with Sherwood, who was Barrett's boyfriend. On October 21, 1995, Barrett left for work at approximately 6–6:30 p.m., leaving Hope in Sherwood's care. Barrett spoke with Sherwood by telephone at approximately 7–7:30 p.m., when he called the restaurant where she was working to report that Hope was ill. Barrett told Sherwood to check Hope's temperature and call again if Hope's condition worsened. About half an hour later, Sherwood called again and reported that Hope was playing and seemed all right. Barrett called Sherwood at approximately 8:30–9 p.m., and Sherwood said that Hope was sleeping. Barrett told Sherwood to let Hope sleep on the bed with him rather than on Hope's pallet on the floor, so that Sherwood could watch her.

When Barrett returned to the room after work at 1:45–2 a.m., she found Hope lying on the bed, entirely covered by a blanket with just one foot showing. Barrett pulled off the blanket to move Hope to her mat on the floor, and saw that Hope was blue. Barrett called 911. Her screams awoke the sleeping Sherwood, who insisted that Hope's heart was still beating. Emergency medical personnel were unable to revive Hope. An autopsy showed that Hope had died of brain damage resulting from blunt force injuries sustained at or shortly before the time of her death.

On October 22, 1995, Sherwood admitted to police investigators that, a month prior to the child's death, he had struck Hope hard enough to cause bruising as punishment for misbehavior. Hope's mother stated that she had noticed other bruises on Hope's body after that incident, at times when Hope had been in Sherwood's care. Sherwood told investigators that Hope had been thrown against the dashboard of his truck and hit by a falling toolbox several days before her death, when he stopped suddenly to avoid a deer. He also said that he had accidentally struck Hope when he opened a bathroom door, unaware that the child was standing behind it. He acknowledged that he had been alone with Hope during the entire time Barrett was at work the night Hope died, but denied having struck or otherwise injuring Hope that evening.

The prosecutor charged Sherwood with Hope's murder. The State sought the death penalty, whereupon Sherwood's retained counsel withdrew. Pursuant to Indiana Rule of Criminal Procedure 24, the court appointed qualified lead counsel and co-counsel to defend Sherwood. During the months preceding trial, Sherwood expressed his dissatisfaction with his appointed counsel, and his objections to being represented by them. (R. at 4578, 4772, 4812–14, 4838–39.) The court denied Sherwood's request for substitute appointed counsel. Thereafter, Sherwood repeatedly requested permission to proceed pro se, asserting that his waiver was knowing, voluntary and intelligent. (R. at 4814, 4897, 5415, 5438–39.)

Defense counsel filed a motion styled as a "Suggestion of Incompetency," and the court appointed two psychiatrists (one of whom was also an attorney) to evaluate Sherwood. Both psychiatrists concluded that Sherwood was competent to stand trial, i.e., that he was able to understand the proceedings and to assist, if he chose to do so, in his own defense. (R. at 5219, 5223.) Appointed counsel questioned Sherwood in detail regarding whether he understood that he would be responsible for every stage of his defense if he elected self-representation, and Sherwood affirmed his understanding. (R. at 5340–42.) The trial judge alerted Sherwood to the specific perils of proceeding pro se and advised him against doing so. (R. at 5364–68, 5394–96.)

At the close of the hearing, the trial judge ruled that the trial would proceed with hybrid representation, with Sherwood appearing "pro se and by appointed counsel." (R. at 5907, 6052.) Sherwood and appointed counsel both objected to this resolution, with appointed counsel pointing out that the defense theories were "inherently different" and "totally non-reconcilable and totally inconsistent." (R. at 5792, 5795.) Sherwood renewed his request to proceed pro se with standby counsel.

At trial, Sherwood and his appointed counsel did not coordinate strategy and in fact presented conflicting theories of defense. Counsel conceded that Sherwood had inflicted the fatal blows. (R. at 9117, 9123, 9132, 11644, 11676.) In so doing, defense counsel also conceded that Sherwood's story was untruthful. (R. at 9116.) Counsel asserted, however, that the action had been reckless rather than knowing or intentional. (R. at 9128–29.) Therefore, defense counsel's theory was that, although Sherwood had committed a lesser offense, such as voluntary manslaughter or reckless homicide, he lacked the requisite

culpability for murder. (R. at 9128, 11672.) For his own part, Sherwood asserted his factual innocence. (R. at 9172, 11686–89.)

The jury found Sherwood guilty of murder, and the court entered a sentence of life imprisonment without parole.

## Imposition of Hybrid Representation

The basis of a criminal defendant's right to self-representation under the Sixth Amendment of the United States Constitution was articulated in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Supreme Court held that a State may not "constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." *Id.* at 807, 95 S.Ct. 2525. The Court went on to say that "[t]he Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Id.* at 819, 95 S.Ct. 2525. "Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense." *Id.* at 821, 95 S.Ct. 2525.

In *Faretta,* the Court recognized that a pro se defendant would lose the advantage of an attorney's training and experience. Nevertheless, it held that respect for the individual, which is the "lifeblood of the law," requires that the accused's choice be honored "although he may conduct his own defense ultimately to his own detriment." *Id.* at 834, 95 S.Ct. 2525.

The Court did, however, recognize certain limitations on the right of self-representation:

> [I]n order to represent himself, the accused must "knowingly and intelligently" forego those relinquished benefits [traditionally associated with the right to counsel]. Although a defendant may not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Id.* at 835, 95 S.Ct. 2525 (citations omitted) (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). A defendant need not possess technical legal knowledge to knowingly exercise his right of self-representation. *Id.* at 836, 95 S.Ct. 2525. Defendant Faretta was "literate, competent, and understanding" and was voluntarily exercising his own free will. *Id.* at 835, 95 S.Ct. 2525. In addition, the trial court judge had explicitly warned Faretta that he would be held to the same rules of trial procedure as if he were represented by counsel, and had advised him that he was making a mistake in proceeding pro se. *Id.* at 835–36, 95 S.Ct. 2525. Under these circumstances, the Court held that denial of the right to proceed pro se violated the Sixth Amendment. *Id.* at 836, 95 S.Ct. 2525.

The Supreme Court shed additional light on the right of self-representation and its limits in *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). In *McKaskle,* a defendant was allowed to proceed pro se at trial, but the court appointed standby counsel to provide assistance. *Id.* at 170, 104 S.Ct. 944. The defendant appealed on the basis that standby counsel had unfairly interfered with his presentation of his defense. *Id.* at 173, 104 S.Ct. 944. The Court found that there is no absolute constitutional bar to the participation of standby counsel.[1] *Id.* at 176, 104 S.Ct. 944. The primary focus in determining whether a defendant's *Faretta* rights have been violated is on

---

1. Specifically, the Court held that under the facts of the case, any unsolicited intrusions were too few and too minor to have undermined the defendant's appearance before the jury as one representing himself. *McKaskle,* 465 U.S. at 187, 104 S.Ct. 944.

"whether the defendant had a fair chance to present his case in his own way." *Id.* at 177, 104 S.Ct. 944. Further, "the right to speak for oneself entails more than the opportunity to add one's voice to a cacophony of others." *Id.* The core of the *Faretta* right is the defendant's entitlement to preserve actual control over the case he chooses to present to the jury. *Id.* at 178, 104 S.Ct. 944.

In *McKaskle,* the Court recognized that the defendant had in effect been allowed hybrid representation, since he ultimately represented himself on some matters and elected to have counsel represent him on others. *Id.* at 183, 104 S.Ct. 944. The Sixth Amendment does not require a trial judge to permit hybrid representation, *see id.* at 183, 104 S.Ct. 944, but it does allow the trial judge to appoint standby counsel even over the defendant's protest, so long as the defendant retains actual control over his defense and his appearance before the jury as a pro se defendant is not undermined,[2] *id.* at 184–85, 104 S.Ct. 944.

In a relatively recent capital case, *Godinez v. Moran,* 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), the Court held that the competency standard for waiving the right to counsel may be not be higher than the competency standard for standing trial. *Id.* at 391, 113 S.Ct. 2680. The Court reiterated the longstanding distinction between competence to choose self-representation, which is measured by competence to stand trial, and competence to represent oneself effectively, which the defendant is not required to demonstrate. *Id.* at 399–400, 113 S.Ct. 2680.

At the same time, however, the Court recognized a separate constitutional prerequisite for waiving the right to counsel, i.e., the requirement that such a waiver be knowing and voluntary. *Id.* at 400, 113 S.Ct. 2680. Whereas the competency inquiry focuses on the ability to understand the proceedings, the "knowing and voluntary" inquiry focuses on whether the defendant actually understands the significance and consequences of his choice and whether the decision is uncoerced. *Id.* at 401 n. 12, 113 S.Ct. 2680. In addition, this Court has held that the right to represent oneself must be clearly and unequivocally asserted within a reasonable time before the trial begins. *Hunt v. State,* 459 N.E.2d 730 (Ind.1984).

Therefore, a defendant who is competent to stand trial and who knowingly, intelligently and voluntarily makes a timely and unequivocal waiver of counsel is entitled to exercise the right of self-representation, even in a capital case. Here, Sherwood's competence to stand trial was properly established, and the trial court's holding in that regard is not challenged on appeal. Therefore, under the teaching of *Godinez,* Sherwood was also competent to waive representation by counsel. Furthermore, Sherwood clearly and repeatedly, and without coercion, expressed his desire to proceed pro se rather than to have appointed counsel represent him.[3] (R. at

---

**2.** This Court has previously stated that the recommended protection for a pro se defendant is standby counsel. *German v. State,* 268 Ind. 67, 73, 373 N.E.2d 880, 883 (1978). On the other hand, appointment of standby counsel is discretionary; a defendant who proceeds pro se has no right to demand the appointment of standby counsel for his assistance. *Kindred v. State,* 521 N.E.2d 320, 323 (Ind.1988). The trial court may have the discretion to direct standby counsel to take over at any point during the proceedings if the defendant's conduct becomes inappropriate, *German,* 373 N.E.2d at 883, though our Court's conclusion on this point may have been superseded by *McKaskle.*

**3.** It has long been established that a defendant does not have a right to appointed counsel of his own choosing. *Moore v. State,* 557 N.E.2d 665, 668 (Ind.1990). Therefore, denial of a defendant's request for substitute appointed counsel will not by itself render a decision to proceed pro se involuntary. Here, the trial court, on multiple occasions, addressed Sherwood's complaints about his relationship with appointed counsel and their handling of his case, and attempted to assuage his concerns. (R. at 4575–91, 4689–702, 4765–839.) After hearing Sherwood out, the court concluded that appointment of substitute counsel was not required and would

4814, 4897, 5438–39, 5795.) He explicitly objected to the court's order that appointed counsel appear on his behalf and represent him at trial. Throughout the entire trial, Sherwood at no time acquiesced in the presentation of a defense by appointed counsel. He therefore manifested the voluntary, unequivocal and timely assertion of his right of self-representation that is required.

■ Because Sherwood was competent to waive counsel, and made timely requests that were both voluntary and unequivocal, the remaining question is whether his waiver was knowing and intelligent. The court reminded Sherwood that his life was at risk, and Sherwood acknowledged that, if permitted to go pro se, "whatever happens I can only blame myself." (R. at 4805.) Sherwood also acknowledged that an individual who elects self-representation cannot later assert ineffective assistance of counsel. (R. at 5019–20); *Carter v. State*, 512 N.E.2d 158 (Ind.1987).

At a competency hearing, Sherwood confirmed that he knew he would be solely responsible for conducting voir dire, challenging prospective jurors, making opening and closing statements, making objections and motions, making arguments, subpoenaing witnesses, and preserving issues for appeal, at both the guilt and sentencing phases. (R. at 5340–42.) The trial court cautioned Sherwood that an attorney would be better at investigation and interrogation, that Sherwood's incarceration would be a disadvantage in preparing a defense, and that an attorney would generally have greater skills. (R. at 5365.)

The court further admonished Sherwood that the State would be represented by an attorney, (R. at 5366), that Sherwood could be in the awkward position of questioning himself if he chose to testify, (R. at 5384), and that Sherwood would have to abide by the same rules of evidence as an attorney, (*see* R. at 5394–95). The trial court advised Sherwood against proceeding pro se. (R. at 5395–96.) After this colloquy, Sherwood again stated that he voluntarily, knowingly and intelligently waived his right to counsel, knowing that the consequence could be death and that the State had superior resources and experience. (R. at 5415, 5440.) His waiver of counsel met all the constitutional requirements.

■ The conflicting defense theories presented at trial illustrate how imposed hybrid representation can defeat the Sixth Amendment right of self-representation. In her opening statement, lead defense counsel stated that Sherwood did "a very reckless act . . . with disregard totally for the harm that it would cause." (R. at 9081.) Sherwood's objection that "[s]he's convicting me already in the presence of the jury" was overruled.[4] (R. at 9083–84.) In Sherwood's opening statement, he asserted that he had not inflicted the fatal injury. (R. at 9172.) In the defense closing statement, appointed counsel conceded that Sherwood had told a story no one could believe, (R. at 11652), and admitted on Sherwood's behalf that he had committed reckless homicide or involuntary manslaughter, (R. at 11672). Sherwood's motion for mistrial was denied.

In *Carter*, 512 N.E.2d 158, this Court anticipated such a problematic scenario. There, a defendant who requested and re-

only delay the proceedings unnecessarily. (*See* R. at 4895–97.) The court's conclusion was borne out by a psychiatric expert who examined Sherwood and testified that, given Sherwood's intractable attitude toward the conduct of his defense, substitute counsel would be unlikely to meet with Sherwood's approval either. (R. at 5611–12.)

4. Intertwined in this case is the issue of whether the defense of culpability for a lesser included offense, asserted over Sherwood's objections, improperly usurped his right to decide what plea to enter. Because this issue is not raised on appeal, and because we find the imposition of hybrid representation and resulting presentation of conflicting theories of defense dispositive, we need not and do not address this question.

ceived hybrid representation later claimed ineffective assistance of counsel. *Id.* at 161. The conviction was affirmed on the basis that the defendant had, in fact, controlled his own defense. *Id.* at 164. In that opinion, we recognized that reluctance to permit a defendant to act as co-counsel "may be due, at least in part, to the problems inherent in hybrid representation," *Id.* at 162 n. 1, one of which is the potential for repetitious or contradictory defense efforts, *id.* at 164. This prophecy was fulfilled in the current case. Furthermore, this Court expressed concern that a pro se defendant who does not remain "the captain of his defense team," *id.* at 163, may enjoy the legal benefits of self-representation without the accompanying burden of surrendering any later claim of ineffective assistance of counsel, and might even seek to undermine his appointed counsel's strategy to create an appealable error, *id.* at 164.

The record demonstrates that the trial court's decision regarding hybrid representation, and appointed counsel's strategy for avoiding imposition of the death penalty despite daunting inculpatory evidence, were well-meant efforts to protect Sherwood's interests and, indeed, to save his life. The federal case law, however, makes it clear that these efforts violated the Sixth Amendment.

Because Sherwood was competent to stand trial; because he made a knowing, intelligent and voluntary waiver of his right to counsel in a timely and unequivocal manner; and because he was denied actual control of the case presented to the jury, the trial court's imposition of hybrid representation violated the standards of *Faretta* and its progeny.

Finally, the U.S. Supreme Court has said that "[s]ince the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to [Sherwood], its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." *McKaskle,* 465 U.S. at 177 n. 8, 104 S.Ct. 944.

Therefore, denial of the right of self-representation in this case was an error that requires reversal.

### Conclusion

We reverse and remand for a new trial.

DICKSON, SULLIVAN, SELBY, and BOEHM, JJ., concur.

SELBY, J., concurring with separate opinion.

I join in the majority opinion but write separately to make a particular observation about *pro se* litigation. A capital defendant's request to proceed *pro se* places the trial judge in a most untenable position. The judge must effectuate the defendant's right to self-representation as well as the defendant's right to a fair and meaningful trial. Both of these rights are of constitutional dimension and, indeed, the United States Supreme Court has declared that the right of self-representation is fundamental, holding that, "Like others, prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts." *Hudson v. Palmer,* 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984) (citation omitted). I believe that equal access to justice would be better served if our entire judicial system were better equipped to handle *pro se* litigation.