Victor CIHONSKI, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 84A01–0204–CR–149.

Court of Appeals of Indiana.

Dec. 18, 2002.

Transfer Denied Jan. 22, 2003.

Robert D. Hepburn, Terre Haute, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. Ind.Code § 35–43–4–2(a) (1998).

2. Ind.Code § 35–46–3–12(a) (1998 & Supp. 2002).

3. Ms. Warner's name appeared as Amy Warner in the trial transcript, Tr. pp. 24–35, but appeared as Amy Woerner on the State's Wit-

## OPINION

MATHIAS, Judge.

Victor E. Cihonski, Jr. ("Cihonski") was found guilty of theft,[1] as a Class D felony, and cruelty to an animal,[2] as a Class A misdemeanor, after a jury trial in Vigo Superior Court. He appeals raising one issue, which we restate as whether the trial court erred when it did not advise Cihonski about the dangers of self-representation when he requested to proceed with hybrid representation.

We affirm.

### Facts and Procedural History

On June 28, 2001, Amy Warner[3] ("Warner"), an employee at Petco in Terre Haute, saw Cihonski leave the Petco store carrying a pet bag.[4] Warner stated that Cihonski had not purchased anything because she was the only cashier working at that time. Tr. pp. 25, 27. Approximately ten minutes later, another store employee noticed that a Congo African Gray parrot was missing. This parrot is considered rare and was worth $1500.

Later that day, Cihonski bought a birdcage from a Petland store in Terre Haute. The cashier at Petland asked Cihonski what kind of bird he had, and he told the cashier that it was a canary or a cockatiel. The birdcage that Cihonski bought was much too big for either such bird. When Cihonski drove away from the store, the cashier noticed that the trunk of his car was propped open.

That night, when Emma Jackson ("Jackson"), Cihonski's wife, came home from

ness List. Appellant's App. p. 39. We chose to use the spelling from the trial transcript.

4. A pet bag was described as a white, opaque bag that customers use to fill with dog biscuits at the pet bar in the Petco store. Tr. p. 25.

work, Cihonski had a parrot and a cage. Neither the parrot nor the cage was there when she left for work that morning. Cihonski told Jackson that he had bought the parrot at a flea market near Griffith, Indiana, which is located about a two-hour drive away.

Later that evening, Vigo County Sheriff's Deputies Scott Brown ("Deputy Brown") and George Pfrank[5] ("Deputy Pfrank") and Reserve Deputy Bob Pruitt ("Deputy Pruitt") were dispatched to Cihonski's home regarding the theft of the parrot from Petco. The officers knocked on the door, and Cihonski and Jackson both answered the door. The officers asked Cihonski if he had recently bought a bird. Cihonski told them that he had purchased a cockatiel at a flea market the prior week. The officers then asked if they could come into the house and see the bird to verify that it was not the parrot that was stolen. Cihonski told them they could not come in. The officers also asked if they could speak with Jackson, and Cihonski would not let them speak with her. He then slammed and locked the door.

As Deputy Brown was walking back to his patrol vehicle to call his supervisor, he could see through a window in the front of the house and saw Cihonski running toward the back of the house. Deputy Brown stated it looked like Cihonski was holding something in his hands. Tr. p. 43. Deputy Brown told Deputy Pruitt to go around to the back of the house. When Deputy Pruitt reached the back door, Cihonski opened the door, and Deputy Pruitt saw a bird flapping in Cihonski's hands. Cihonski shut and locked the door and ran back in the house.

Jackson then ran outside and yelled to the officers to come inside. Once inside, Deputy Brown saw Cihonski bending over the toilet attempting to pull off the parrot's feathers and stuff the parrot down the toilet. Deputy Brown told Cihonski to stop, but he did not stop immediately. Deputy Brown again told Cihonski to stop, and he then stopped trying to stuff the parrot down the toilet. When Deputy Brown looked into the toilet, he discovered that Cihonski had apparently broken the parrot's neck, tore its head off, and flushed the parrot's head down the toilet because only the remains of the parrot were in the toilet. The officers then arrested Cihonski and removed the parrot's remains. Michelle Laswell, a manager at Petco, identified the remains as those of the stolen parrot.

On July 3, 2001, Cihonski was charged with theft, as a Class D felony, and cruelty to an animal, as a Class A misdemeanor. A jury trial was held on March 5–6, 2002. At the jury trial, Cihonski was represented by public defender, Dennis Majewski. After the State had presented five of its witnesses, Cihonski told the trial court in a hearing outside the presence of the jury that he wished to cross-examine the State's witnesses. The trial court informed Cihonski that the proper way to do that would be to tell his attorney the questions that Cihonski wished to ask or that Cihonski could continue the trial on his own. Tr. p. 84. Cihonski stated that he did not want to proceed by himself. *Id.* Cihonski's counsel told the trial court that he did not think that Cihonski should be allowed to question witnesses himself. Tr. p. 85. The trial court stated that if Cihonski conferred with his counsel and still had a problem, then he could address it with the court. Tr. p. 86.

---

5. Deputy Pfrank's name appeared as George Pfrank in the trial transcript, Tr. pp. 54–69, but appeared as Jorge Frank in the State's Witness List. Appellant's App. p. 39. We chose to use the spelling from the trial transcript.

The trial resumed, and during the cross-examination of the State's next witness, defense counsel requested a bench conference. After that conference, Cihonski was allowed to question the witness. During the cross-examination of the next witness, the same thing occurred.

On the second day of the trial, defense counsel moved to withdraw because Cihonski wished to proceed pro se. Cihonski stated that his defense counsel's advice was hurting his case, and he did not like the way the case was going. Tr. p. 134. The trial court denied defense counsel's motion. The State then rested its case, and Cihonski testified on his own behalf against the advice of defense counsel. The jury found Cihonski guilty of theft, as a Class D felony, and cruelty to an animal, as a Class A misdemeanor. Cihonski now appeals.

### Discussion and Decision

The basis of a defendant's right to self-representation under the Sixth Amendment of the United States Constitution was articulated in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In that case, the Supreme Court held that a State may not "constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." *Id.* at 807, 95 S.Ct. 2525. The Court went on to acknowledge that when a defendant takes on his own defense, he gives up many of the traditional benefits associated with the right to counsel, such as an attorney's training and experience, and may even "conduct his own defense ultimately to his own detriment." *Id.* at 834–35, 95 S.Ct. 2525. The Court therefore declared that where a defendant

wishes to represent himself, he must knowingly, intelligently, and voluntarily relinquish these benefits. *Id.* at 835, 95 S.Ct. 2525.

Before waiving these benefits, a trial court must make an accused "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). There are no required words that the trial court must include in its advisement to the defendant; it must only determine that the defendant is making a voluntary, knowing, and intelligent waiver of his right to counsel. *Osborne v. State*, 754 N.E.2d 916, 921 (Ind. 2001).

Additionally, "although a defendant need not have the skill and experience of an attorney, he must be competent to stand trial." *Id.* (citing *Godinez v. Moran*, 509 U.S. 389, 400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)). This means he must have the mental capacity to understand the proceedings. *Id.* "Before claiming that his right to self-representation has been denied, a defendant must timely, clearly, and unequivocally assert that right." *Id.* (citations omitted).

Cihonski contends that he was denied his right to self-representation because the trial court did not advise him of the dangers and disadvantages of conducting his own defense.[6] He claims that because he was allowed to cross-examine witnesses and to testify in a monologue fashion, he was representing himself, and it was therefore necessary for the trial

---

6. Cihonski also claims that there was prosecutorial misconduct during his trial, but he did not object to the alleged comments at the trial. Failure to object at trial results in waiver of an issue on appeal. *Benson v. State*, 762 N.E.2d 748, 755 (Ind.2002). Therefore, this claim is waived.

court to give him an advisement to ascertain that he was proceeding knowingly, intelligently, and voluntarily. In fact, however, Cihonski was also represented by defense counsel through all stages of the trial; therefore, Cihonski had what is known as hybrid representation, a combination of self-representation and representation by counsel.

■ Our supreme court has refused to recognize a constitutional right to hybrid representation. *Lockhart v. State*, 671 N.E.2d 893, 898 (Ind.Ct.App.1996) (citations omitted). The court has instead held that the decision of whether to grant a motion for hybrid representation is within the sound discretion of the trial court. *Id.* (citing *Myers v. State*, 510 N.E.2d 1360, 1360 (Ind.1987)). We review this decision for an abuse of discretion. *Id.*

Cihonski cites to *Sherwood v. State*, 717 N.E.2d 131 (Ind.1999), for the proposition that hybrid representation should not have been imposed in this case. In *Sherwood*, the defendant requested permission to proceed pro se prior to the trial and was found to be competent, but the trial court required hybrid representation for him. *Id.* at 133. During the course of the trial, the defendant and his counsel presented conflicting theories of defense. *Id.* Our supreme court found that because the defendant was competent, made a knowing, intelligent, and voluntary waiver of his right to counsel in a timely and unequivocal manner, and was denied actual control of the case presented to the jury, the trial court's imposition of hybrid representation violated the right to self-representation. *Id.* at 137.

Our case is distinguishable from *Sherwood* for two reasons. First, the defendant in *Sherwood* requested to proceed pro se prior to the trial and therefore made a timely motion. Cihonski did not request to proceed pro se until the middle of the trial. He waited until after five of the State's witnesses had testified before he asked to participate in the questioning, and even then, he stated that he did not want to proceed by himself and wanted counsel to assist. It was not until the second day of the trial, and right before the State was going to rest, that Cihonski told the trial court that he wished to proceed pro se. Therefore, his motion to proceed pro se was not timely.

Second, the defendant and defense counsel in *Sherwood* presented different theories of defense during the trial. In the present case, Cihonski and his counsel did not present different theories of defense. They both maintained Cihonski's innocence as to the theft of the parrot and both admitted that Cihonski killed the parrot, but left it up to the jury to decide whether it was done in a humane way.

It is within the trial court's discretion to allow hybrid representation. In this case, defense counsel was appointed for Cihonski prior to the trial. It was not until five of the State's witnesses had testified that Cihonski requested to be able to also ask the witnesses questions. At that time, Cihonski stated that he did not want to proceed by himself; he only wanted to be able to ask questions of the State's witnesses. Tr. p. 84. The trial court then allowed Cihonski to cross-examine the State's last two witnesses after defense counsel did so.

On the second day of the trial, Cihonski requested to proceed pro se and defense counsel moved to withdraw. The trial court denied the motions because they occurred so late in the trial and because Cihonski's request was based on his unhappiness with how the trial was going. Tr. p. 134. The trial then resumed, the State rested its case, and Cihonski testified. During the continuation of the trial,

defense counsel participated in presenting Cihonski's defense. Throughout the trial, Cihonski and his defense counsel never presented different theories of defense. They both maintained that Cihonski was innocent of the theft of the parrot and that he had killed the parrot, but left it for the jury to decide if it was done humanely.

Under these facts and circumstances, it was not an abuse of discretion for the trial court to require Cihonski to complete the trial with hybrid representation. Since this case presents a situation of hybrid representation and not one where the defendant proceeded pro se, the trial court was not required to give Cihonski the standard advisements on the dangers of proceeding pro se. The trial court acted properly under difficult circumstances.

Affirmed.

BAILEY, J., and SULLIVAN, J., concur.