## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Oct 30 2017, 9:46 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles A. Allen, *Appellant-Defendant,* | October 30, 2017 |
| | Court of Appeals Case No. 49A04-1609-CR-2241 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable William J. Nelson, Judge |
| | The Honorable Richard E. Hagenmaier, Commissioner |
| | Trial Court Cause No. 49F18-1309-FD-60983 |

**Altice, Judge.**

## Case Summary

[1] Following a jury trial, at which Charles Allen represented himself, Allen was convicted of class D felony battery and class A misdemeanor resisting law enforcement. He was also adjudicated a habitual offender. On appeal, Allen argues that he was entitled to discharge pursuant to Ind. Criminal Rule 4(C). Allen also claims that fundamental error occurred below because he was not provided with standby counsel at trial and because the trial court quashed his subpoenas for officer conduct reports.

[2] We affirm.

## Facts & Procedural History

[3] At about 2:45 in the morning on September 14, 2013, Officer Timothy Elliot of the Indianapolis Metropolitan Police Department (IMPD) was working security for two bars in downtown Indianapolis. He was standing outside the establishments in full police uniform when citizens alerted him to a fight between two men on the other side of the street.

[4] Officer Elliot ran to break up the fight, shouting that he was a police officer. The men, later identified as Aloric Carson and Justin Melton, continued fighting and eventually Carson was on top of Melton punching him as Melton appeared to be unconscious on the ground. Officer Elliot crouched down and attempted to pull Carson off of Melton. At that point, another man came forward and punched Officer Elliot in the chest, knocking the officer backward and causing him to lose his grip on Carson. That man then helped Carson up and the two ran from the scene south down Meridian Street. Officer Elliot gave

chase and shouted for them to stop. He then deployed his taser, but only one probe hit Carson. The men then split up, with Carson heading east and the other man turning west. Officer Elliot pursued Carson and caught up to and arrested him.

[5] About ten or fifteen minutes after the fight, two witnesses – both security guards at the bars – noticed Allen walking with another man on the west side of Meridian Street and heading northbound away from the scene. Recognizing Allen as the man who had struck Officer Elliot, the witnesses alerted Officer Kimberly Evans. Officer Evans then quickly stopped and detained Allen. Thereafter, Officer Elliot returned to the area with Carson and identified Allen as his attacker. Officer Christopher Faulds, who had seen Officer Elliot get punched and also chased the two men, likewise positively identified Allen.

[6] Despite being arrested and charged with class D felony battery and class A misdemeanor resisting law enforcement on September 14, 2013, Allen's jury trial did not take place until August 25, 2016. During this nearly three-year period, Allen caused or agreed to a number of continuances. Additionally, Allen was initially represented by a public defender and then fired his public defender in January 2015, after which he filed an unsuccessful disciplinary complaint against counsel. A month later, the trial court reappointed defense counsel. At a hearing on August 26, 2015, a day before the scheduled jury trial, defense counsel noted his increasing difficulties with Allen. After warning of the dangers of self-representation, the trial court granted Allen's request to

proceed pro se and reset the trial for October 22, 2015.[1] The trial was later rescheduled on the State's motion to November 19, 2015.

[7] On November 9, 2015, Allen failed to appear for a pretrial hearing, resulting in the trial court vacating the upcoming trial. Upon Allen's request, the trial was postponed until February 18, 2016. Allen again failed to appear for a pretrial hearing on February 16, and the trial was reset for April 28, 2016. At a pretrial hearing on April 25, Judge William Nelson observed that he had been added as a defendant in a federal lawsuit filed by Allen.[2] The judge recused, vacated the trial date, and began the process for appointment of a special judge. The Indiana Supreme Court, however, remanded the case to the trial court on June 3, 2016, with instructions for the judge to determine if there was a showing of bias or prejudice on the judge's part, in addition to the lawsuit filed, warranting recusal.

[8] After the remand order, the trial court held a hearing on June 14, 2016, at which Allen's jury trial was scheduled for August 25, 2016. In the interim, several hearings were held and Allen filed a number of motions, discovery requests, and subpoenas. Allen represented himself at trial, and the basis of his defense was that he had been misidentified. The jury found him guilty as

---

[1] Also in August 2015, the trial court granted the State's request to amend the charges and file an information for the habitual offender enhancement.

[2] Allen filed his pro se federal lawsuit in the Southern District of Indiana on September 8, 2015, against Officer Elliot, several other IMPD officers, other members of law enforcement, and the two bars at which Officer Elliot was working on the morning in question. On April 4, 2016, he filed a pleading to add numerous judicial officers of the Marion County Superior Courts as defendants in his federal suit.

charged and also found him to be a habitual offender. Thereafter, Allen was sentenced to a total of six years in prison. He now appeals. Additional facts will be provided below as needed.

## Discussion & Decision

## Criminal Rule 4(C)

[9] Allen argues that he was entitled to discharge under Crim. R. 4 (C) – the "one-year rule." This rule provides in relevant part:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar …. Any defendant so held shall, on motion, be discharged.

Thus, the State must bring a defendant to trial within one year, excluding any days attributable to the defendant or court congestion. *Griffith v. State*, 59 N.E.3d 947, 954 (Ind. 2016). "When a defendant seeks or acquiesces in a delay, the time limitations set by Criminal Rule 4 are extended by the length of the delay." *State v. Isaacs*, 757 N.E.2d 166, 168 (Ind. Ct. App. 2001), *trans. denied*.

[10] We employ a dual standard of review on appeal from Crim. R. 4 rulings. When the issue involves the application of law to undisputed facts, our review

is de novo. *Austin v. State*, 997 N.E.2d 1027, 1039 (Ind. 2013). A clearly erroneous standard applies, however, where the trial court's ruling was based on its resolution of disputed facts. *Id*. at 1040. Under this standard, we will neither reweigh the evidence nor determine the credibility of witnesses. *Id*. We will reverse only upon a showing of clear error, which leaves us with a definite and firm conviction that a mistake has been made. *Id*.

[11] On appeal, Allen acknowledges that 637 days of delay are attributable to him or court congestion.[3] Thus, according to Allen's calculations, he was tried on the 439th day (1076 minus 637), which was 74 days too late. Allen disputes several additional blocks of time that the State alleges are attributable to him. We need address only two in order to conclude that Allen was tried within the Crim. R. 4(C) deadline. Both of these occurred early in the case when Allen was represented by counsel.

[12] The first period in dispute is between November 13, 2013 and January 15, 2014, amounting to a delay of 63 days. Allen failed to appear for a pretrial hearing on November 6, 2013, and the trial court issued a bench warrant for Allen's arrest. Allen surrendered on November 12, 2013. As a result of Allen's failure to appear, the trial court reset the pretrial hearing for January 15, 2014. Relying exclusively on *State v. Isaacs*, 757 N.E.2d 166, Allen argues that his failure to

---

[3] These delays are from September 18, 2013 to November 12, 2013 (55 days), March 5, 2014 to July 2, 2014 (119 days), September 3, 2014 to November 5, 2014 (63 days), February 24, 2015 to October 22, 2015 (240 days), and November 19, 2015 to April 28, 2016 (161 days). These delays actually total 638 days.

appear constituted a delay of only six days and that he cannot be charged with the delay between November 12 (the day he surrendered) and January 15 (the date of the rescheduled pretrial hearing). We cannot agree.

[13] *Isaacs* does not hold, as contended by Allen, that a defendant's failure to appear causes delay only for the length of his absence. In that case, Isaacs was charged with resisting law enforcement on May 19, 1999, and his trial was scheduled for July 16, 1999. He failed to appear for trial. When he appeared ten days later, the trial court set a pretrial hearing for August 6, 1999. The record was unclear regarding what occurred at the August hearing, and a trial date was not set until after the State filed a motion on October 15, 1999, asking the court to set a trial date. After additional delays not caused by Isaacs, he filed a motion for discharge on June 30, 2000, which was granted.

[14] In affirming the discharge, we observed that Isaacs's failure to appear only caused a short delay. We noted that it was a matter of days before Isaacs appeared in court following his failure to appear *and* that the record did not reflect any details regarding the pretrial hearing on August 6, 1999. Because the record was silent concerning the reason for any delay after August 6, 1999, we held that "delay subsequent to that date should not be attributed to Isaacs." *Id*. at 169. In other words, the delay caused by Isaacs lasted only from July 16 to August 6, 1999.

[15] Similarly, in the case at hand, Allen's failure to appear in November 2013 caused a delay up to the rescheduled pretrial hearing on January 15, 2014.

These 63 additional days of delay attributable to Allen bring us to just eleven days outside of the Crim. R. 4(C) deadline.

[16]  The second disputed period is a delay of 48 days between January 16, 2014 and March 5, 2014. Allen contends that the record is silent concerning the reason for delay following the January 15, 2014 hearing. It is not. The trial court's minute sheet from this hearing indicates that the parties agreed to a continuance off the record. Further, the transcript from this very brief hearing reveals that the continuance was granted off the record prior to the hearing.[4]

[17]  Allen complains that his attorney did not sign the minute sheet, which bears a stamp noting the agreed-upon continuance with signature lines and only the prosecutor's signature. Allen also notes that the CCS does not make mention of the continuance. These arguments amount to a request to reweigh the evidence, which we cannot do.

[18]  There is evidence in the record to support the trial court's determination that Allen, by counsel, agreed to the continuance off the record. With this period of delay attributed to Allen, the trial court correctly determined that Allen was tried within the Crim. R. 4(C) deadline. Thus, the trial court properly denied Allen's various motions for discharge.

---

[4] The transcript of this hearing is two pages long and is comprised of a discussion between the trial court and Allen, during which Allen acknowledged that his attorney "just told me that my court date was continued." *Supp. Transcript Vol. II (filed March 21, 2017)* at 21.

**Standby Counsel**

[19] Allen argues that the trial court erred in not providing him with standby counsel at trial. Acknowledging that he did not preserve the issue below, he claims the error was fundamental. The fundamental error doctrine is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). This exception to the waiver rule is available only in egregious circumstances. *Id*.

[20] Allen began representing himself on August 26, 2015, because he disagreed with decisions made by his appointed attorney. He represented himself in about a dozen hearings, before various judicial officers, prior to his jury trial a year later. During one such hearing on June 14, 2016, Allen indicated that he would like the assistance of standby counsel at trial. Judge Nelson granted the request for standby counsel, but then Allen raised questions about having co-counsel rather than standby counsel. Judge Nelson indicated that an attorney acting as co-counsel was not an option. Allen was informed that only three options existed: pro se, represented by counsel, or pro se with standby counsel. Allen responded, "I'm not sure about this right now." *Supp. Transcript Vol. II (filed June 16, 2017)* at 101. Judge Nelson then set a trial date and advised Allen that he needed to make up his mind quickly regarding whether he wanted a public defender to represent him at trial.

[21]     At the following hearing on June 27, 2016, Judge Nelson indicated that Allen had still not signed the waiver of counsel and declaration of desire to proceed pro se. Allen then indicated that he had spoken with "Mr. Ford from the PD's office" and had decided that he wanted to have standby counsel. *Transcript Vol. II* at 117. Later in the hearing, the following discussion occurred:

> [Court]:      And I wish Mr. Ford hadn't left, because I think I'm going to appoint him as standby counsel.
>
> [Defendant]: Excuse me?
>
> (Whereupon, Court Staff confers with the Court.)
>
> [Court]:      The State is under the impression that you did not want standby counsel? Mr. Ford relayed to the Court staff that you did not want standby counsel. Did he misunderstand you?
>
> [Defendant]: I don't think he misunderstood me. He know [sic] I wanted standby counsel.
>
> [Court]:      He did? Well, evidently he did misunderstand you because he told the Court staff you stated you did not.
>
> [Defendant]: That's not true.
>
> [Court]:      Okay. So you want standby counsel? Yes?
>
> [Defendant]: Yes.

*Id*. at 120-21.

[22] Although there were three subsequent pretrial hearings, the issue of standby counsel did not come up again. In fact, at the final pretrial hearing before Commissioner Richard Hagenmaier, Allen was generally advised of how the upcoming trial would proceed. After indicating that Allen was not required to present evidence at trial, Commissioner Hagenmaier stated, "I just want to make sure you [understand] because you're representing yourself and there is no attorney here to help you. Okay? *There's not going to be any attorney here during trial.* You understand that? All right." *Transcript Vol. II* at 156 (emphasis supplied). At no point during this hearing did Allen reassert his desire for standby counsel. At his jury trial two days later, over which Commissioner Hagenmaier presided, Allen similarly did not mention the lack of standby counsel.

[23] Appointment of standby counsel is discretionary, and a defendant who proceeds pro se has no right to demand the appointment of standby counsel for his assistance. *Sherwood v. State*, 717 N.E.2d 131, 135 n. 2 (Ind. 1999). Here, it is not even clear that Allen still desired the assistance of standby counsel when the trial occurred. Under the circumstances, the trial court was entitled to accept Allen's apparent readiness on the day of trial and did not have an obligation to sua sponte ensure that Allen did not want standby counsel. Allen has failed to establish fundamental error in this regard.

**Subpoenas**

[24] Allen filed a number of subpoenas below, many of which were granted by the trial court. He challenges the denial of two handwritten subpoenas, which are not file stamped in the record before us. These were directed to "IMPD Internal Affairs" and "IMPD Citizens Complaint Office" and sought, respectively, all conduct reports for Officer Elliot and all citizen complaints regarding Officer Elliot. *Appellant's Appendix Vol. III* at 31, 33. The trial court denied these subpoenas as "already quashed" on April 6, 2016. *Id.* Allen did not challenge this action below. Now, on appeal, Allen contends that the trial court committed fundamental error by quashing the subpoenas. We summarily conclude that Allen has failed to establish fundamental error.

[25] Judgment affirmed.

Baker, J. and Bailey, J., concur.