## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 25 2019, 6:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles D. Grays,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 25, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1994<br><br>Appeal from the Elkhart Superior Court<br><br>The Honorable Teresa L. Cataldo, Judge<br><br>Trial Court Cause No.<br>20C01-1708-F2-29 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a traffic stop, Charles Grays was charged with dealing in cocaine, unlawful possession of a firearm, resisting law enforcement, and operating a vehicle with a suspended license. At the pre-trial hearing, ten days before trial, Grays asked to waive counsel and proceed pro se. After Grays completed a waiver of attorney form, the trial court held a hearing on his request, which it ultimately denied. The case proceeded to trial and Grays was convicted of all charges. Grays now presents two issues for our review which we restate as: (1) whether Grays' request to proceed pro se was timely, and (2) whether the trial court deprived Grays of his right to self-representation. Concluding that Grays' request was timely and the trial court denied Grays the right to represent himself, we reverse the trial court's judgment and remand for a new trial.

# Facts and Procedural History

[2] Around 1:32 a.m. on August 5, 2017, Corporal Travis Hamlin of the Elkhart Police Department was patrolling when he observed a white Chevy Impala near the intersection of Chester Avenue and Chapman Avenue. As Corporal Hamlin approached, the Impala quickly turned on its signal and turned right onto Chapman Avenue. Noting that the driver of the Impala failed to signal 200 feet prior to turning, Corporal Hamlin followed the vehicle, which "quickly pulled off to the right side of the road" and the driver, later identified as Grays, opened the door and exited the vehicle. Appellant's Appendix, Volume 2 at 5.

Corporal Hamlin activated his overhead lights and advised Grays to stand by the rear bumper of the Impala.

[3] Corporal Hamlin explained to Grays why he stopped him and Grays stated that "there was something going on with his engine[.]" Transcript, Volume II at 197. Grays returned to the driver's seat of his vehicle and pressed the accelerator to demonstrate his car troubles. As Corporal Hamlin was standing near the Impala, he observed a "small, white, rock-like substance that [he] recognized to be crack cocaine" inside the driver's door of the Impala. *Id.* at 198. Corporal Hamlin asked Grays if he had anything on his person that he needed to know about and Grays responded "no." *Id.* at 199. Corporal Hamlin then asked whether there was anything in Grays' car he needed to know about and Grays "took off running[.]" *Id.* Grays was later arrested and police discovered cocaine and a handgun during an inventory search of Grays' vehicle. *See id.* at 248-49.

[4] On August 8, 2017, the State charged Grays with the following: Count I, dealing in cocaine, a Level 2 felony; Count II, unlawful possession of a firearm by a serious violent felon, a Level 4 felony; Count III, resisting law enforcement, a Class A misdemeanor; and Count IV, operating while license suspended, a Class A misdemeanor. At the initial hearing, the trial court found Grays indigent and appointed a public defender. A jury trial commenced on

March 5, 2018, but a mistrial was declared.[1]  The trial was rescheduled for June 25, 2018.

[5]  At the final pretrial conference on June 14, 2018, in front of a senior judge, Grays requested to proceed pro se:

> [Grays]:  I wish to waive counsel.  I wish for him to remove hisself [sic] from my case.  I'll go pro se.  I'll go pro se.

> [Court]:  If you want to proceed pro se, that is your right; however, you should understand that there are a number of disadvantages to proceeding pro se.  First of all, you can't evaluate your case objectively since you're a party to it.  Secondly, you can't investigate your case while incarcerated . . . with the same ability as the public defender is able to investigate the case.  [Number three], if you are – if you proceed pro se, you will be held to the same standards and rules that a practicing attorney would have to abide by.  In other words, if you make an objection, it has to be based upon a proper legal ground.  If you choose a jury and say things that you shouldn't say during the *voir dire* portion of the trial, you'll be stopped and admonished.  I can tell you that I have been a practicing lawyer since 1973.  I was a deputy prosecutor for 20 years. . . .  I was a public defender for two years.  I was a superior court judge in this very court for 18 years.  I know a lot about Indiana criminal law, I would venture to

---

[1] The jury was selected and sworn and the trial court adjourned for the evening.  The next day, the trial court became aware of a conflict and the presiding judge was unable to preside in the case.  Thus, the case was transferred to a special judge pursuant to Local Rules.

> say a lot more than you do. But if I were charged
> with a serious crime, I would hire a lawyer to
> represent me. I would not attempt to represent
> myself. You say you want to represent yourself;
> that isn't going to change the trial date.
>
> [Grays]:      I'm fine with that.

Tr., Vol. II at 85-86.

[6]     The senior judge then asked Grays to sign a waiver of attorney form but did not

rule on the request. Grays initialed next to each paragraph of the waiver and

signed the form, which was filed with the court on June 20. After learning of

Grays' request to proceed pro se, the trial court judge scheduled an additional

hearing on its own motion for June 21 to "insure that Gray[s] was indeed

intending on proceeding pro se." Appellant's App., Vol. 2 at 79. At the

hearing, the trial court engaged Grays in the following colloquy:

> [Court]:      Mr. Grays, it's my understanding you met my
>               predecessor, Judge Biddlecome, when I was not
>               here last week; and from the notes that he left me, it
>               indicated that you wanted to proceed pro se in the
>               jury trial that commences on Monday. Is that
>               correct?
>
> [Grays]:      Yes.
>
> * * *
>
> [Court]:      Mr. Grays, I'm not sure what . . . Judge Biddlecome
>               informed you about proceeding pro se, and I have

my own little spiel that I do that I'm going to give you the benefit of. So even though you have this filed – and I read the letter attached with that signed motion and it seems that we are going over the same things, . . . first of all, your suppression hearing has already taken place. That was ruled on by Judge Christofeno; and your – I'll give you an opportunity to speak in a moment. So, in addition, Mr. Grays, what legal training have you had, if any?

[Grays]: Well, I can read the material and I understand.

[Court]: Okay. That's not what I asked you.

[Grays]: I have no legal training.

[Court]: Okay. You have no legal training.

[Grays]: No.

[Court]: Do you understand what a motion in *limine* is?

[Grays]: Yes.

[Court]: Okay. Please explain to the court what your version of a motion *in limine* is.

[Grays]: A motion *in limine* is something when the State files something saying that something cannot be spoken of, whatever the subject is, at trial.

[Court]: So it's your understanding that the State can only file a motion *in limine*?

[Grays]:        Well, I guess, my attorney can file a motion in limine[.]

[Court]:        Okay.  But if you're acting on [sic] your own attorney[,] . . . which is what you desire to do –

[Grays]:        Yes.

[Court]:        -- correct?

[Grays]:        Yes.

[Court]:        So do you . . . think that this case is ripe for a motion *in limine*?  Do you think a motion *in limine* should be filed?  Do you know what the deadlines are to file a motion *in limine*?

[Grays]:        Well, if I'm provided the legal material, I can –

[Court]:        We're going to trial on Monday, which is, what, four days from now?

[Grays]:        Yes.

[Court]:        Four days.

[Grays]:        Yes.  I understand that.

[Court]:        So you're asking this court to allow you to proceed pro se on Monday?

[Grays]:        Yes.

* * *

[Court]:      . . . Do you know the Indiana Rules of Evidence?

[Grays]:     I get the book, yes. . . . I'll know what it is.

[Court]:      Okay. I cannot provide you with any documentation. So how do you plan on obtaining that book?

* * *

[Court]:      . . . So, Mr. Grays, how do you feel that you will be prepared to represent yourself at trial? Do you know anything about jury selection?

[Grays]:     I'll know Monday. . . .

[Court]:      We're making a decision right now.

[Grays]:     And I said I'll know Monday.

[Court]:      . . . Right now as it stands, I am denying your motion to proceed pro se based on the fact that you are not equipped to represent yourself at a jury trial[.]

Tr., Vol. II at 90, 92-93, 102, 104.

[7]    After orally denying Grays' motion, the trial court filed a written order on the morning of his jury trial. In its order, the trial court explained that it was clear

that "Grays does not have a clear grasp of the legal ramifications of proceeding pro se even after [the court] has attempted to explain them to him and that Grays repeatedly interjects his version of the law and misstates legal concepts." Appellant's App., Vol. 2 at 84. Citing Grays' lack of legal training and inability to "comport himself in a manor [sic] that complies with relevant rules of procedure and substantive law[,]" the trial court concluded that Grays did not make a knowing, intelligent, voluntary, or timely waiver of counsel. *Id*. at 86. Ultimately, it found that Grays "did not present a clear and unequivocal request to proceed pro se, and it was not presented to the [c]ourt within a reasonable time prior to jury trial[.]" *Id*. At trial, Grays objected to the trial court's denial of his motion. The jury found Grays guilty on all counts. Grays now appeals.

# Discussion and Decision

## I. Standard of Review

[8] Grays asserts that the trial court denied him the right to self-representation and he is therefore entitled to a new trial. The Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution guarantee a defendant the right to be represented by counsel. *Kowalskey v. State*, 42 N.E.3d 97, 102 (Ind. Ct. App. 2015). "The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights[.]" *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938). And a defendant's right to self-representation is implicit in the Sixth Amendment right to counsel. *Faretta v. California*, 422

U.S. 806, 819-20 (1975) ("[T]he right to self-representation – to make one's own defense personally – is thus necessarily implied by the structure of the [Sixth] Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.") "[F]orcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Id*. at 817.

[9] The right to counsel may be waived by a knowing, voluntary, and intelligent waiver. *Kowalskey*, 42 N.E.3d at 102. We note that although a defendant need not have the skill and experience of an attorney, he or she must be competent to stand trial. *Osborne v. State*, 754 N.E.2d 916, 921 (Ind. 2001) (citing *Godinez v. Moran*, 509 U.S. 389, 400 (1993)). Whether the trial court violated a defendant's constitutional right to self-representation is a question of law which we review de novo. *Hill v. State*, 773 N.E.2d 336, 342 (Ind. Ct. App. 2002), *trans. denied*, *cert. denied*, 540 U.S. 832 (2003). Before claiming that his right to self-representation has been denied, a defendant must timely, clearly, and unequivocally assert that right. *Osborne*, 754 N.E.2d at 921. When a defendant has been deprived of the right to self-representation, "a new trial is warranted because this right is not subject to harmless error analysis." *Id*.

## II. Waiver of Counsel

[10] In determining whether a defendant voluntarily and intelligently waived counsel, we look to the "particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

*Poynter v. State*, 749 N.E.2d 1122, 1127 (Ind. 2001) (quoting *Zerbst*, 304 U.S. at 464). There are no "prescribed talking points" that a trial court is required to include when advising a defendant. *Id*. at 1126. Instead, a trial court need only determine that the defendant is making a voluntary, knowing, and intelligent waiver of counsel. *Id*. And the law indulges every reasonable presumption against a waiver of this fundamental right. *Id*. To determine whether a defendant's waiver is knowing and intelligent, we employ a four-factor test:

> (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed *pro se*.

*Id*. at 1127-28; *Hopper v. State*, 957 N.E.2d 613, 618 (Ind. 2011). When applying these factors, we acknowledge that the trial court "is in the best position to assess whether a defendant has knowingly and intelligently waived counsel[.]" *Poynter*, 749 N.E.2d at 1128. In addition,

> we will most likely uphold the trial judge's decision to honor or deny the defendant's request to represent himself where the judge has made the proper inquiries and conveyed the proper information, and reached a reasoned conclusion about the defendant's understanding of his rights and voluntariness of his decision.

*Id*. We have provided several guidelines for what a court should advise the defendant when he considers self-representation, including:

> The defendant should know of the nature of the charges against him, the possibility that there may be lesser included offenses within these charges, and the possibility of defenses and mitigating circumstances surrounding the charges. The defendant should be aware that self-representation is almost always unwise, that the defendant may conduct a defense which is to his own detriment, that the defendant will receive no special indulgence from the court and will have to abide by the same standards as an attorney as to the law and procedure, and that the State will be represented by experienced professional legal counsel.

*Dowell v. State*, 557 N.E.2d 1063, 1066-67 (Ind. Ct. App. 1990), *cert. denied*, 502 U.S. 861 (1991); *see also Jones v. State*, 783 N.E.2d 1132, 1138 (Ind. 2003). However, these guidelines "do not constitute a rigid mandate setting forth specific inquiries that a trial court is required to make before determining whether a defendant's waiver of right to counsel is knowing, intelligent, and voluntary." *Jones*, 783 N.E.2d at 1138 (internal quotation omitted).

## A. Timeliness of Request

[11] The State focuses its argument on the timing of Grays' request to proceed pro se. The right to self-representation must be asserted within a reasonable time prior to the day of trial. *Russell v. State*, 270 Ind. 55, 62, 383 N.E.2d 309, 314 (1978). A "reasonable" time before trial depends on the facts of each case. *Id*. at 63-64, 383 N.E.2d at 315.

> Respect must be accorded to the defendant's constitutional right of self-representation in the construction of this requisite. By requiring a "reasonable" time before day of trial, we intend only to prohibit those assertions of the self-representation right by

which the defendant merely seeks delay for its own sake. This can best be judged with reference to the type of trial at hand, and the nature and involvement of the pre-trial proceedings. The more complicated the case, and the more involved the pre-trial proceedings, the earlier a "reasonable" assertion will naturally be, and vice-versa.

*Id*.

[12] The trial court found that Grays' request to proceed pro se was untimely. The State argues that the trial court "properly viewed [Grays'] request as a spontaneous offer once he realized he would not be appointed replacement counsel as he had requested[.]" Brief of Appellee at 24. In *Burton v. Collins*, the Fifth Circuit affirmed the trial court's denial of a defendant's request to proceed pro se as it was a "spontaneous response offered at a point when [he] realized he was not going to get a new lawyer." 937 F.2d 131, 133 (5th Cir. 1991), *cert. denied*, 502 U.S. 1006 (1991).

[13] However, *Burton* is distinguishable from the case at hand because there, the defendant's request came after voir dire. *Id*. at 132-33. Here, Grays requested to proceed pro se ten days before trial after expressing dissatisfaction and conflict with his attorney. It does not appear that Grays requested to proceed pro se "merely seek[ing] delay for its own sake." *Russell*, 270 Ind. at 64, 383 N.E.2d at 315. Indeed, Grays repeatedly affirmed that he would proceed to trial as planned and we view the trial court's decision to hold a separate hearing on his request as support that Grays made a timely request.

# B. *Poynter* Factors

Having determined that Grays made his request within a reasonable amount of time before trial, we turn to whether Grays knowingly, voluntarily, and intelligently waived his right to counsel. In so doing, we apply the four *Poynter* factors:

> (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed *pro se*.

749 N.E.2d at 1127-28.

The State argues that the trial court properly denied Grays' request because he did not make a knowing and intelligent waiver of counsel "given that [Grays] only made his request when he learned that he would not get replacement counsel as he had requested, that he lacked legal expertise, and that he refused to listen to warnings given regarding the dangers of self-representation." Br. of Appellee at 14.

The first two *Poynter* factors focus on whether the defendant had sufficient information about the dangers and disadvantages of self-representation, one through the trial court's inquiry, and the other through any other evidence in the record. *Drake v. State*, 895 N.E.2d 389, 393 (Ind. Ct. App. 2008). In its order denying Grays' request, the trial court analyzed these two factors and

explained that it appeared that Grays' decision to proceed pro se was based on his belief that his counsel would not attempt to relitigate his motion to suppress that was previously decided by the trial court. It also concluded that Grays "does not have . . . a clear grasp of the legal ramifications of proceeding pro se even after [the judge] has attempted to explain them to him and that Grays repeatedly interjects his version of the law and misstates legal concepts." Appellant's App., Vol. 2 at 84.

[17] At the June 14 hearing, in response to Grays' request to proceed pro se, the trial court warned Grays of a "number of disadvantages" of self-representation, including the inability to objectively evaluate the case, difficulty investigating the case while incarcerated, and that he would be held to the same standards as a licensed attorney. Tr., Vol. II at 85-86. The trial court judge further explained to Grays that although he had been a practicing attorney since 1973, he would hire a lawyer if charged with a serious crime. Grays was also advised that if he proceeded pro se, his trial date would not change.

[18] Similarly, the waiver of counsel form initialed and signed by Grays cautioned that "it is rarely in a defendant's best interest to represent himself or herself in a criminal case . . . [and a defendant] will be held to the same procedural and substantive stand[ard]s that apply to licensed attorneys[.]" Appellant's App., Vol. 2 at 78. At the hearing on Grays' request to proceed pro se, the trial court further advised Grays that if he represented himself, he could not come back on a post-conviction relief and claim ineffective assistance of counsel. *See* Tr., Vol. II at 96.

[19] Notably, the competency reports filed with the trial court before Grays made his request indicated that "Mr. Grays makes it clear that he is at odds with his attorney who he feels is not representing him properly." Appellant's App., Vol. 2 at 68. "He appears to have a decent understanding of the charges against him, their seriousness, and also has a decent understanding of the judicial process[.]" *Id.* at 69. For these reasons, we conclude that the first two factors weigh in favor of a finding that Grays knowingly, intelligently, and voluntarily waived his right to counsel.

[20] We now turn to the remaining *Poynter* factors. The third factor concerns whether the defendant has the background and experience necessary to make a voluntary, knowing, and intelligent waiver of his or her right to counsel. *Drake*, 895 N.E.2d at 394. The State asserts that Grays "lacked the understanding of nearly every legal issue he attempted to argue." Br. of Appellee at 23. In its written order, the trial court addressed this factor and concluded only that Grays lacked legal training. Citing excerpts from the hearing on Grays' request, the trial court concluded that Grays "does not have a clear grasp of the legal ramifications of proceeding pro se even after [the trial court judge] has attempted to explain them to him and that Grays repeatedly interjects his version of the law and misstates legal concepts." Appellant's App., Vol. 2 at 84.

[21] The record reveals that the only specific inquiry by the trial court into Grays' background was whether he had any legal training, including the extent of his knowledge of a motion *in limine* and the Indiana Rules of Evidence. However,

Grays indicated on his waiver of attorney form that he had an eleventh-grade education, he had earned his G.E.D., and acknowledged that he "can read, write, and understand English." *Id*. at 77. Furthermore, the presentence investigation report confirms that Grays completed the eleventh grade and earned his G.E.D, and also reveals he attended Brown Mackie College for one semester before the school closed. *Id*. at 148, 155. Grays' adult criminal history is comprised of one misdemeanor conviction and five felony convictions. Thus, Grays "was no stranger to the criminal justice system." *Taylor v. State*, 944 N.E.2d 84, 91 (Ind. Ct. App. 2011). We also note that Grays was determined to be competent to stand trial based on two competency evaluations filed with the court. *See* Tr., Vol. II at 80; Appellant's App., Vol. 2 at 68-73.

[22]   The evidence in the record illustrates that Grays had the requisite background, education, and experience to make a knowing, voluntary, and intelligent waiver of counsel. Instead, the trial court focused solely on Grays' lack of legal training. It is improper for a trial court to deny a defendant's request for self-representation due to the defendant's lack of legal knowledge. *See Faretta*, 422 U.S. 806 at 836 (holding that a defendant's "technical legal knowledge" was irrelevant in assessing whether he knowingly exercised the right to defend himself). Thus, this factor also weighs in favor of a knowing, voluntary, and intelligent waiver of counsel.

[23]   Finally, we evaluate the context of Grays' decision to represent himself. If a defendant's decision to proceed without counsel appears tactical, then this

factor weighs in favor of finding a knowing and intelligent waiver. *Drake*, 895 N.E.2d at 395. It appears that at the June 14 pretrial hearing, the trial court found Grays competent to stand trial based on several reports. Grays stated he was not ready to proceed to trial because he had not discussed a strategy with his attorney, "there's [been] a lot of conflict going on between" him and his attorney, and he tried to file for replacement counsel. Tr., Vol. II at 81. Grays' counsel stated that Grays wanted him to file an interlocutory appeal regarding the motion to suppress, which would not be necessary and explained that was a "[t]actical decision by defense." *Id*. at 85. After the State notified the court it was prepared for trial, the trial court asked Grays if there was anything else he would like to say, to which he responded he would like to waive counsel. It appears that Grays was dissatisfied with his attorney and likely believed he would be better off representing himself. Thus, this factor also weighs in favor of a knowing and voluntary waiver.

[24] We again acknowledge our standard of review and the presumption against waiver of counsel; however, we conclude all four *Poynter* factors weigh in favor of a knowing, intelligent, and voluntary waiver of counsel. Grays was an experienced criminal litigant and had been sufficiently informed of the dangers and disadvantages of representing himself at the hearings and in the waiver of attorney form. He was competent and possessed the requisite education, experience, and background to enable him to knowingly, intelligently, and voluntarily waive counsel. Although the State and trial court pointed to Grays' flawed arguments, misunderstanding of the law, and lack of preparation for

trial, "[i]t is the defendant . . . who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." *Faretta*, 422 U.S. at 834 (quotation omitted). Based on our evaluation of the *Poynter* factors, we conclude Grays made a knowing, intelligent, and voluntary waiver of counsel and the trial court improperly denied his request to proceed pro se. And because Grays was denied the fundamental right to self-representation, he is entitled to a new trial. *See Osborne*, 754 N.E.2d at 921.

# Conclusion

For the reasons set forth above, we conclude that Grays' request to proceed pro se was timely and he knowingly, voluntarily, and intelligently waived his right to counsel. Because the trial court denied Grays' fundamental right to represent himself, we reverse the judgment of the trial court and remand for a new trial.

Reversed and remanded.

Kirsch, J., concurs.

Riley, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Charles D. Grays,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

Court of Appeals Case No.
18A-CR-1994

**Riley, Judge dissenting.**

I respectfully dissent from the majority's conclusion that the trial court deprived Grays of his right to self-representation. The trial court concluded that Grays had not made a timely, unequivocal request to proceed *pro se*, Grays did not understand the legal consequences of proceeding *pro se*, and Grays was unable to proceed in a manner consistent with the rules of trial procedure and substantive law. In light of these circumstances, the trial court concluded that Grays had not knowingly, intelligently, and voluntarily waived his right to counsel.

As acknowledged by the majority, we review a trial court's decision on the waiver of the fundamental right to counsel with deference, as the trial court is in the best position to make those determinations. *Poynter*, 749 N.E.2d at 1128. We also indulge every reasonable presumption against the waiver of the right to counsel. *Id*. at 1126. Given our standard of review, the presumption against the waiver of counsel, and the facts and circumstances of this case, I would affirm the trial court's determination. For these reasons, I respectfully dissent.